## Case No. 5,291.

### GEAR et al. v. GROSVENOR et al.

[6 Fish. Pat. Cas. 314; Holmes, 215; 3 O. G. 380.] [1]

Circuit Court, D. Massachusetts. March 11, 1873.

PATENTS—VALIDITY—FRAUD IN PROCURING — IMPEACHMENT IN COLLATERAL PROCEEDING — PUBLICATION OF NOTICE OF HEARING —COMMISSIONER OF PATENTS—JURISDICTION—PRACTICE — ASSIGNMENT—ANTICIPATION—NOVELTY.

1. Patent granted Nathaniel Gear, November 8, 1853, for a machine for turning and cutting irregular forms, sustained.

2. A patent from the government can not, in a collateral proceeding, be impeached for fraud in procuring it. The allegation, that "the same was procured by fraud, misrepresentation, and in violation of law," is simply an allegation of a conclusion of law from facts, which facts are not pleaded.

3. The provision, that "notice of the day set for the hearing of the case shall be published, as now required by law, for at least sixty days:" Held, to be satisfied by a publication for three successive weeks, the first of said publications being at least sixty days before the hearing.

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

4. The construction given to a statute by the officers appointed to execute it, and acted upon for a long term of years, though not conclusive, is entitled to great consideration by the court.

5. The jurisdiction of the commissioner over the subject-matter commences with the filing of the petition, which makes it his duty to exercise that jurisdiction, by causing a proper notice to be published.

6. The filing by the patentee of a petition for extension, and the payment of the required sum for expenses, confers the jurisdiction.

7. Where an act is to be done, or a patent granted, upon proof to be laid before a public officer, upon which he is to decide, the fact that he has done the act, or granted the patent, is prima facie evidence that the proofs have been regularly made, and were satisfactory. No other tribunal is at liberty to re-examine or controvert the sufficiency of such proofs, if laid before him, when the law has made such officer the proper judge of their competency and sufficiency.

8. It is not necessary that the patent should contain any recitals that the prerequisites to the grant of it have been duly complied with, for the law makes the presumption.

9. A conveyance made before a grant of extension, becomes operative upon the right as soon as the extension has been granted, and, by force of such conveyance, the legal title under the extended, as well as the original, term passes to the grantee.

10. The policy of the law would seem to require that the patentee applying for the extension, should himself have an interest, but an equitable interest is sufficient. Such an interest the patentee in this case had by virtue of the stipulation between himself and his grantee, that he should be interested to the extent of one-half the proceeds from sales or uses of the patented invention.

11. An assignment of an interest in an invention and letters patent therefor, before the expiration of the original term, does not carry with it any interest in a subsequently extended term, unless the assignment contains a specific provision to that effect.

[Cited in Johnson v. Wilcox & Gibbs Sewing Mach. Co., 27 Fed. 691.]

12. The words "may be granted," in the habendum of a deed, must be construed with reference to what precedes them, and may refer to the reissues. If the thing granted be only in the habendum, the deed will not pass it.

13. The owners of a patent are estopped from prosecuting those who have worked the invention under a license from a third party, relying upon the admission of the owners that said third party had the right to grant such license. Whether such admission would avail the respondents, would depend upon whether the acts relied upon to prove infringement were after, and in consequence of, these admissions, and before they had notice that they were recalled and withdrawn.

14. The invention described in letters patent to Levy, assignee of Hazard Knowles, for a tonguing, grooving, and molding machine, did not anticipate the invention of Gear.

15. The court ought to be fully convinced, by a clear preponderance of evidence, before declaring a patent void, on the ground of prior knowledge and use.

[Cited in Gear v. Fitch, Case No. 5,290.]

In equity. Final hearing on pleadings and proofs. Suit on letters patent [No. 10,204] "for a machine for turning and cutting irregular forms," granted Nathaniel Gear, November 8, 1853, and extended seven years; brought by complainants [Alonzo S. Gear and others] as assignees of the same [against Jonathan P. Grosvenor and others].

B. R. Curtis and T. L. Livermore, for complainants.

B. F. Butler and Marshall & Rice, for defendants.

SHEPLEY, Circuit Judge. This is a bill for an injunction and account based upon letters patent granted to Nathaniel Gear, November 8, 1853, for a machine for turning and cutting irregular forms, and extended for the additional term of seven years, from November 8, 1867. The answers of the defendants allege, that the extension of the letters patent was procured by fraud, misrepresentation, and in violation of law.

It is well settled that a patent from the government can not, in a collateral proceeding, be impeached for fraud in procuring its issue; this can only be done in a direct proceeding to set it aside. Eureka Co. v. Bailey Co., 11 Wall. [78 U. S.] 489; Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 796.

Defendants, however, claim, that while they are precluded from relying upon any fraud or misrepresentation made to the commissioner of patents, while in the lawful exercise of his functions in judicially determining upon a matter in which he had acquired jurisdiction, they have a right to aver and prove the nullity of his decision, for want of jurisdiction of the question upon which it is made. As a matter of fact, they contend that the notice, required by law to be published sixty days previous to a hearing before the commissioner of patents on an application for extension of letters patent, was fraudulently suppressed, and never published in the manner required by law.

Defendants also claim, that even if the order and notice in the proceedings for obtaining the extension were published in compliance with the terms of the order of the commissioner, the publication was not made as required by the terms of the law then in force. The order of the commissioner was as follows: "Ordered that this notice be published in the Republican and the Intelligencer, Washington, D. C., and in the Washington County News, Marietta, Ohio, once a week for three successive weeks; the first of said publications to be at least sixty days previous to the day of hearing." Defendants claim this was not a publication "for at least sixty days," required by the act of 1861 [12 Stat. 246]. For this reason, as well as by reason of the alleged suppression of the publication of the notice as ordered, it is contended that the commissioner of patents never acquired jurisdiction of the subject-matter, and that the extension was granted without authority of law.

If the defense, of want of validity of the extension by reason of informality in the order of notice, or fraudulent suppression of publication of the notice ordered, be one which is open to the defendants in a suit brought for alleged infringement of the extended patent, it may well be doubted whether the allegation in the answer in this case is sufficient to let in the defenses set up. The allegation, that "the same was procured by fraud, misrepresentation, and in violation of law," is simply an allegation of a conclusion of law from facts, which facts are not pleaded. There is nothing in the allegation in the answer which would take the defense out of the scope of the decisions of the supreme court, that the act of the commissioner can not be impeached for fraud.

But if the defense were well pleaded in the answer, and the facts were alleged, which are relied upon to establish the fraud and the absence of jurisdiction, I do not think they would avail the defendants in this proceeding. The act of 1836, c. 357, § 18 [5 Stat. 117], made it the duty of the commissioner of patents, whenever a patentee made application in writing to the commissioner for an extension of his patent beyond the term of its limitation, to cause to be published in one or more of the principal newspapers in the city of Washington, and in such other paper or papers as he may deem proper, published in the section of country most interested adversely to the extension of the patent, a notice of such application, and of the time and place when and where the same will be considered, that any person may appear and show cause why the extension should not be granted. The act of 1848, c. 47, § 1 [9 Stat. 231], vested in the commissioner of patents, solely, the power to extend patents, previously vested in a board composed of the secretary of state, commissioner of patents, and solicitor of the treasury, and provided for a reference of the case to the principal examiner having charge of the class of inventions to which the case belongs, after application made to the commissioner, "and sixty days' notice given thereof." The law of 1861, c. 88, § 12, required all applications for the extensions of patents to be filed at least ninety days before the expiration thereof, "and notice of the day set for the hearing of the case shall be published, as now required by law, for at least sixty days."

As has been previously stated, the commissioner, in the case of this application, ordered the notice to be published "for three successive weeks, the first of said publications to be at least sixty days previous to the day of hearing,"—and the claim is, that the publication should have been made for sixty days successively before the hearing, and not having been so ordered or made, the commissioner had no jurisdiction.

It should here be noted, that it appears that the construction put upon the act of 1861 by the commissioner in this case, in ordering the notice, was in accordance with the invariable practice of the office, no change having been made, after the passage of that act, in the forms of the orders of notice as issued, since the passage of the act of 1848. The construction given to a statute by the officers appointed to execute it, and acted upon by them for a long term of years, though not conclusive, is entitled to great consideration by the court. Union Ins. Co. v. Hoge, 21 How. [62 U. S.] 35–66; Edwards' Lessee v. Darby, 12 Wheat. [25 U. S.] 210.

But it is not necessary to place the decision on this ground. The jurisdiction of the commissioner over the subject-matter commences with the filing of the petition, which makes it his duty to exercise that jurisdiction by causing a proper notice to be published. Before such order is issued, he must, in the exercise of that jurisdiction, have determined whether the publication should be in one or more of the principal newspapers in Washington; what newspapers in Washington were "principal newspapers" in the sense of the statute; what "other paper or papers he may deem proper" for the publication, in the particular case before him; and what "section of country is most interested adversely to the extension of the patent." It is plain from this examination of the statute, that the filing by a patentee of the petition for extension, and the payment of the required sum for expenses, confers the jurisdiction. The subsequent acts—of selecting the papers in which publication shall be ordered, and the number and locality of the papers, and issuing the order, and adjudicating upon the question whether that publication has been made according to law—are all in the exercise of the jurisdiction previously acquired.

It is insisted that the certificate of the commissioner granting the extension, shows upon its face a want of jurisdiction, and that the notices were not given as required by the act of 1861. The certificate of the commissioner is, that, in accordance with the provisions of the act of 1836 and the act of 1848, he "did, on this 30th day of September, 1867, decide that said patent ought to be extended." It contains no recitals respecting the notices issued, or the mode of their publication. Such recitals in a patent, whether original, reissued, or extended, are unnecessary. Where, as in this case, an act is to be done, or a patent granted upon proofs to be laid before a public officer, upon which he is to decide, the fact that he has done the act, or granted the patent, is prima facie evidence that the proofs have been regularly made, and were satisfactory. No other tribunal is at liberty to re-examine or controvert the sufficiency of such proofs, if laid before him, when the law has made such officer the proper judge of their com-

petency and sufficiency. It is not necessary that the patent should contain any recitals that the prerequisites to the grant of it have been duly complied with, for the law makes the presumption, and if, indeed, it were otherwise, the recitals would not help the case without the auxiliary proof that these prerequisites had been, in fact, complied with. Philadelphia & T. R. Co. v. Stimpson, 14 Pet. [39 U. S.] 458; Seymour v. Osborne, 11 Wall. [78 U. S.] 543; Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 797; Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 384.

The answers of defendants deny the title of the complainants to the extension of the patent.

The deed of Nathaniel Gear, the patentee, to Alonzo S. Gear, one of complainants, is dated July 10, 1867. It recites the granting of the original patent; that application has been made for an extension, and, for a valuable consideration, assigns, sells, and transfers to Alonzo S. Gear, all the right, title, and interest which the grantor has, or may have, in and to the invention, by virtue of the granting of the said extension, followed by the usual habendum clause. The extension was granted on the 30th of September, 1867, for the term of seven years from the 8th day of November, 1867. On the 25th of November, 1867 (after the extension was granted), Alonzo S. Gear conveyed one undivided half of the patent, for the extended term, to John Gear, the other complainant.

Defendants contend that the assignment of N. Gear to Alonzo S. Gear was delivered before the extension was granted, and that Alonzo S. Gear did not take thereby a vested legal title, but only an equitable interest, capable of being perfected by a court of equity, in event of a refusal by N. Gear to perfect it by a subsequent conveyance. In Railroad Co. v. Trimble, 10 Wall. [77 U. S.] 380, the supreme court held that a conveyance, made before a grant of extension, became operative upon the right as soon as the extension had been granted, and that, by force of such a conveyance, the legal title in that case, under the extended as well as under the original patent, passed to the grantee.

The act of congress authorizing extensions of patents, undoubtedly contemplated a benefit to the patentee, not yet sufficiently rewarded by the receipts from his patent. The policy of the law would seem to require, that the patentee applying for the extension should himself have an interest. An equitable interest is sufficient for this purpose, the court having decided that he may convey the legal interest. Such an interest the patentee in this case had, by virtue of the stipulations between himself and his grantee, that he should be interested to the extent of one-half of the proceeds from sales, or use of the patented invention.

Defendants aver that complainants never had the exclusive ownership of the territory of New York and Massachusetts for the extended term of the patent. It is clear that complainants have no title to the extended term for the state of New York. Nathaniel Gear, before the conveyance to A. S. Gear, had conveyed his interest in the extension to the New York Circular Molding Company, by a deed, in terms embracing all extensions that might be granted of the rights in the patent conveyed.

The rights of the complainants in Massachusetts depend upon a state of facts entirely different. Nathaniel Gear, by his assignment, dated April 24, 1854, conveyed to John M. Buell, as follows: "All the right, title, and interest I have in said letters patent in the following territory, and in no other place or places, to wit, the state of Massachusetts; the same to be held and enjoyed by the said John M. Buell, his heirs and assigns, for his own use and behoof, and for the use and behoof of his legal representatives, to the full end of the term for which said letters patent are, or may be granted, as fully and entirely as the same would have been held and enjoyed by me, had this assignment and sale not been made." An assignment of an interest in an invention and letters patent therefor, before the expiration of the original term, does not carry with it any interest in a subsequently extended term, unless the assignment contains a specific provision to that effect. Wilson v. Rousseau, 4 How. [45 U. S.] 646; Bloomer v. McQuewan, 14 How. [55 U. S.] 539; Clum v. Brewer [Case No. 2,909]. The assignment to Buell does not contain any stipulation for an interest in any extended term that might be acquired by the patentee under the acts of congress. The words in the granting clause are, "All the right, title, and interest I have in said letters patent," etc. Referring to the previous recitals in the deed to find the meaning of "said letters patent," we find the recital to be that, "Whereas, Nathaniel Gear, of Zanesville, Ohio, did obtain letters patent of the United States for a machine for turning or cutting irregular forms, which letters patent bear date November 8, 1853. And whereas, John M. Buell is desirous of purchasing from me an interest therein." Thus far, in the granting part of the deed, or in the previous recitals, there is nothing which can, with any show of reason, be claimed to apply to anything but the term of the patent for fourteen years from November 8, 1853. The grantor's interest in this patent for the state of Massachusetts was the subject-matter of the grant. Unless certain words in the habendum clause can be construed as extending the contract to a subject-matter not before embraced, or referred to in the recitals or granting portions of the deed, there can be no doubt as to the intention of the parties. The habendum is to Buell and his assigns "to the full end of the term for which said letters patent are or may be granted, as fully and entirely as the same

would have been held and enjoyed by me, had this assignment and sale not been made." The claim, that the interest in the extended term, either legal or equitable, passed by the deed, is based. upon these words in the habendum clause alone. If the thing granted be only in the habendum, and not in the premises of the deed, the deed will not pass it; and therefore if a man grant black acre only, in the premises of a deed, habendum black acre and white acre, white acre will not pass by this deed. Shep. Touch. 76.

The words "may be granted," must be construed with reference to what precedes them. If not loosely used without any reflection, they may refer to reissues of the patent. As the reissued letters which might be granted, would be for the same term as "the said letters patent," such might be referred to by the words, "to the full end of the term for which said letters patent are or may be granted," as the letters patent which had been, and the reissues which might be granted, would be for the same term, and that the term described in the previous parts of the deed. An assignment, very similar in form to this one, has been construed not to carry the interest in the extended term, in a very carefully considered opinion of Judge Sawyer, in the case of Jenkins v. Nicolson Pavement Co. [Case No. 7,273], in the circuit court for the district of California.

Defendants also claim that complainants have licensed and authorized the defendant, Grosvenor, to make and vend the invention of Nathaniel Gear in the territory of Massachusetts and New York, and have openly encouraged and silently acquiesced in the construction and sale of his machines in those states by both respondents, by printing and circulating handbills and documents signed by them, setting forth that he had the right to construct and vend said invention in those states.

The right in the extended patent for the state of New York is not owned by these complainants. So much of the evidence in the case as relates to alleged infringements in the state of New York, may be laid out of the case.

It appears that at one time Grosvenor, having obtained an interest under the Massachusetts Molding, Wood-Cutting and Turning Company, in the original patent for the state of Massachusetts, supposed that he had thereby acquired an interest in the extended term. The complainants so far acquiesced at one time in this construction of the conveyances as to issue certain circulars, which are introduced in evidence, and which do so far admit that complainants have not the exclusive right for Massachusetts, that they would, in the judgment of this court, estop the complainants from prosecuting as infringers any person who, with knowledge of those circulars, and acting upon the admissions therein made, had, upon the faith of those admissions, placed themselves in a con-

dition to be injured, by allowing those admissions to be disproved. This would be a defense to a purchaser in Massachusetts under Grosvenor, who purchased and used a machine, acting and relying upon the admission of the complainants. Whether it would avail the defendants, would depend upon the question whether the acts, relied upon to prove infringements by them at any given time, were after, and in consequence of, these admissions, and also in reliance upon them, and before they had notice that they were recalled and withdrawn. The defendants were certainly aware, in 1869, that complainants claimed the entire interest and title in the extended term for the state of Massachusetts. The letters of Grosvenor of March 28, and of Lawrence of September 17, 1869, preclude any presumption that they were then acting under any supposed license, encouragement, or acquiescence of the complainants.

The answer alleges that Nathaniel Gear was not the first and original inventor of the thing patented. Defendants rely upon alleged prior knowledge and use by Hazard Knowles, as described in his letters patent, granted April 17, 1849, and prior knowledge and use by J. M. Doe, at Cambridge, Massachusetts; by Levi Haywood, at Erving and at Gardner, Massachusetts, and also prior knowledge and use at Princeton, Massachusetts.

Careful examination of the evidence has satisfied me that J. M. Stuart, who testifies to the use of Exhibit I at Princeton, is mistaken as to time, and that this cutter-head could not have been used at the time he supposes, nor in fact at any time prior to the date of N. Gear's patent.

The invention described in the letters patent to Levy, assignee of Hazard Knowles, for a tonguing, grooving, and molding machine, clearly did not anticipate the invention of Gear. The round cutter-heads in the Knowles machine had no use, except to support the cutters, and did not, like the cutter-head in the Gear machine, serve as a guide or direction to the form or pattern carrying the material to be dressed.

There is much more difficulty and doubt attending the decision on the question of novelty, as affected by the evidence in relation to the alleged prior use by J. M. Doe and Levi Haywood.

In relation to the prior use of cutter-heads, substantially like those claimed in the Gear patent by Doe and Haywood, there is, especially in Haywood's case, a vast mass of contradictory and irreconcilable testimony. Long, and patient, and careful examination of this evidence, shows the utter impossibility of reconciling the conflicting statements, or of avoiding the conclusion that, on one side or the other, the witnesses were testifying to matters not within their knowledge or recollection. It would be useless to spread upon the pages of this opinion an analysis which I

have carefully made of the many hundred pages in the record devoted to this portion of the evidence. Upon this point I need only state the conclusion to which I have come, not without some hesitation and some regret, that, in a case like this of conflicting and contradictory statements from the respective witnesses, the judgment of the court could not have been aided by actual presence before the court of the witnesses on the stand. The complainants are entitled to the benefit of the presumption, arising not only from the grant itself, but its unimpaired existence during the original term and its subsequent extension; the burden is upon those seeking to overthrow it for want of novelty, to satisfy the court upon that issue, especially in a case like this, where the parties have exercised rights under the patent, and claimed interests in it, in the original as well as the extended term, and now rely upon evidence as to transactions occurring seventeen or eighteen years before the giving of the testimony, to impeach the patent. Under these circumstances, the court ought to be fully convinced, by a clear preponderance of evidence, before declaring a patent void, on the ground of prior knowledge and use. The evidence fails to produce a conviction in my mind, that, prior to the date of N. Gear's patent, there was either in the shop of Doe, at Cambridge, or of Haywood, at Erving or Gardner, or elsewhere, any cutter-head in use, embracing the invention described in the claim of that patent.

Decree for an injunction and an account.

NOTE. On rehearing, after decision of Nicolson Pavement Co. v. Jenkins, 14 Wall. [81 U. S.] 452, this decree was revoked and the bill dismissed; it appearing by an assignment in evidence, but not referred to at the first hearing, that the patentee, Gear, had, before patent granted, conveyed to one Scott, who still held the same, all his right, title, and interest in the invention for the state of Massachusetts, habendum to the full end of term for which "letters patent are or may be granted"; and there being no evidence of infringement by the defendants, except in the state of Massachusetts.

[For other cases involving this patent, see note to Gear v. Holmes, Case No. 5,292.]